UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

REAL BRIDGE LLC,

                                        Plaintiff,

      v.

DAN WISE and REBECCA HOLDERREAD,

                                        Defendants.
_____

                                          DECISION AND ORDER

                                          23-CV-6225DGL

Plaintiff Real Bridge LLC ("plaintiff") brings this action against Dan Wise and Rebecca Holderread (collectively "defendants"), alleging fraud. The defendants moved to dismiss the initial Complaint pursuant to Fed. R. Civ. Proc. 12(b)(6), for failure to state a claim (Dkt. #11). Plaintiff cross moved to amend the complaint (Dkt. #17), but later withdrew that motion (Dkt. #19). Plaintiff thereafter filed a second cross motion to amend the complaint (Dkt. #20), and defendants moved to dismiss the proposed amended complaint (Dkt. #22). For the reasons that follow, plaintiff's motion to amend the complaint (Dkt. #20) is granted, and defendants' motion to dismiss (Dkt. #22) is granted in part and denied in part.

**FACTUAL AND PROCEDURAL BACKGROUND**

According to the proposed Amended Complaint (Dkt. #20-4 at Exh. B, hereafter the "complaint"), defendants Wise and Holderread were respectively the founder and Chief Executive Officer, and Chief Financial Officer, of Real Eats America ("Real Eats"), a pre-packaged meal delivery company.

Real Eats was founded in 2016, and suffered annual losses every year thereafter. By mid-2022, it became apparent that Real Eats either needed to be sold, or else needed to raise additional capital by engaging in a "Series B" round of financing from existing investors. It retained Solomon Partners, an investment banking firm, to prepare marketing materials and identify potential strategic buyers.

While it weighed its options, however, Real Eats required interim financing to stay afloat. To that end, Real Eats sought to raise $4 million through a bridge round of financing (the "Bridge Round"). Real Eats opted to do this through the issuance of Convertible Notes, at terms particularly favorable to investors, in order to reflect the riskiness of their investment.

On December 1, 2022, Real Eats held a virtual information session for potential Bridge Round investors, including plaintiff. Attendees were provided with a written presentation titled Real Eats Company Info Session (the "Investor Deck"), with information on Bridge Round financing and the anticipated strategic sale. The Bridge Round portion of the Investor Deck disclosed that Real Eats had suffered significant and increasing financial losses through 2021, with projected future losses of $10.1 million in 2022, and $3.5 million in 2023.

On or about December 20, 2022, pursuant to a Note Purchase Agreement, plaintiff purchased a Convertible Note issued by Real Eats, in the amount of $450,000.00.

By notice to plaintiff and other investors on or about March 1, 2023, defendant Wise advised that Real Eats had ceased operations, due to its inability to "weather the current capital climate," and the abrupt seizure of its bank account by its "senior lender."[1] (Dkt. #20-4 at ¶¶29-31 and Exh. E).

---

[1] Neither the complaint nor subsequent filings identify this entity.

This action followed. Plaintiff asserts that defendants misrepresented Real Eats's future financial prospects and growth potential during the Investor Deck presentation, which induced plaintiff to purchase a Convertible Note that it would not otherwise have purchased, and to suffer financial loss.

## DISCUSSION

### I.  Plaintiff's Cross Motion to Amend the Complaint

Motions to amend a complaint should be "freely [granted] when justice so requires." Fed. R. Civ. Proc. 15(a)(2). Amendments are generally favored, and "should be denied only because of undue delay, bad faith, futility, or prejudice to the non-moving party, and the decision to grant or deny a motion to amend rests within the sound discretion of the district court." *Allstate Ins. Co. v. Elzanaty*, 916 F. Supp. 2d 273, 303 (E.D.N.Y. 2013) (*quoting DeFazio v. Wallis*, 2006 U.S. Dist. LEXIS 95154 at *4-*5 (E.D.N.Y. 2006)).

The Court finds no evidence of undue delay, bad faith, futility or prejudice that would result from amending the complaint, nor have defendants raised any objection thereto. Plaintiff's second cross motion to amend the complaint (Dkt. #20) is hereby granted, and the Court will treat the second proposed Amended Complaint (Dkt. #20-4, hereafter "complaint") as the operative pleading in considering the defendants' motion to dismiss.[2]

### II.  Standard on a Motion to Dismiss

In deciding a motion to dismiss for failure to state a claim under Fed. R. Civ. Proc. 12(b)(6), a court should "draw all reasonable inferences in [plaintiff's] favor, assume all well-pleaded

---

[2] In their second proposed Amended Complaint (Dkt. #20-4), plaintiffs did not restate the constructive fraud, breach of fiduciary duty, and unjust enrichment claims that were part of their initial pleading (Dkt. #1-3). The Court therefore deems those claims to have been withdrawn.

factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted). In evaluating a motion to dismiss, the Court's consideration is generally limited to the pleadings, and to any documents attached or incorporated therein by reference. *See Baird v. Kingsboro Psychiatric Ctr.*, 2013 U.S. Dist. LEXIS 153701 at *6-*7 (E.D.N.Y. 2013).

### III. First Cause of Action: Common Law Fraud

To state a claim sounding in fraud under New York law, plaintiff must set forth facts illustrating: (1) a misrepresentation or material omission of act which was false, and known to be false by the defendant(s); (2) made for the purpose of inducing reliance by plaintiff; (3) who justifiably relied upon it; and (4) was injured thereby. *See Premium Mortg. Corp. v. Equifax, Inc.*, 585 F.3d 103, 108 (2d Cir. 2009).

In this Circuit, "[a]llegations of fraud are subject to a heightened pleading standard. When alleging fraud, 'a party must state with particularity the circumstances constituting fraud,' Fed. R. Civ. P[roc]. 9(b), which [the Second Circuit] ha[s] repeatedly held requires the plaintiff" to specify (1) the allegedly fraudulent statement; (2) the identity of the speaker; (3) the time and place when the statements were made; and (4) an explanation of why the statement was fraudulent. *Nakahata v. New York-Presbyterian Health Care System, Inc.*, 723 F3d 192, 197-98 (2d Cir. 2013)(quoting *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993)). Further, a plaintiff must allege facts that give rise to a "strong inference of fraudulent intent," either by alleging facts showing that the defendant had the motive and opportunity to commit fraud, or by alleging "facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Lerner v. Fleet Bank, N.A.*, 459 F. 3d 273, 290-91 (2d Cir. 2006).

Plaintiff alleges that defendants, during the virtual information session on December 1, 2022, presented several misleading statements about Real Eats's past growth percentages and future growth projections, all of which were intended to paint a picture of financial health and a path to profitability, while failing to disclose facts about Real Eats's structure and financing that would have alerted potential investors that Real Eats was in grave financial distress and on the brink of closure. Furthermore, plaintiffs allege that defendants falsely stated that the purpose of the Bridge Round investments was to fund capital expenditures that would allow the company to continue its growth and expansion, when in fact, defendants had no intention of growing the company, and instead were planning to use the invested funds to reduce their own personal liabilities especially to their senior secure lender, in anticipation of Real Eats's imminent financial collapse. Indeed, Real Eats abruptly closed its doors just ten weeks after plaintiff purchased the Convertible Note, after the senior lender did exercise its authority to seize control of the company's bank account.

Defendants argue that: (1) plaintiff has failed to state a claim against individual defendant Holderread, because it does not allege that she made any particular representations to plaintiff at any time; (2) although plaintiff alleges that to the extent that individual defendant Wise made statements at the information session that proved to be untrue, they were merely "nonactionable statements of corporate optimism"; (3) plaintiff, as a sophisticated investor, cannot demonstrate that its reliance on any of the statements at the information session was justifiable; and (4) plaintiff has failed to plead, with particularity, that either defendant acted with scienter (the intent to defraud), and has instead impermissibly relied on allegations premised upon "information and belief."

### A. Statements By Holderread

Defendants first argue that plaintiff has failed to allege that individual defendant Holderread made any specific fraudulent statements to the plaintiff at the information session, or at any other time.

Plaintiffs contend that regardless of whether Holderread made any affirmative oral statements, as Real Eats's chief financial officer she would logically have contributed to the Info Session materials, was among the persons advertised by Real Eats as "core" team members, and was listed as a contact for investor questions.

The Court agrees with defendants that plaintiffs' allegations against Holderread are too attenuated to set forth a plausible fraud claim against her. Specifically, plaintiffs have failed to allege that Holderread actually made or authored any of the statements alleged to have been fraudulent. Plaintiff's claims against Holderread are accordingly dismissed.[3]

### B. Statements and/or Omissions By Wise

Defendants allege that to the extent plaintiff has alleged that specific statements were made by individual defendant Wise, those statements are not plausibly alleged to have been false or fraudulent.

Specifically, plaintiffs allege that Wise stated during the Info Session, in verbal and written representations and/or charts, that: (1) although Real Eats was valued at $60 million, the company would only need to sell for $16 million to satisfy all of is senior debt, convertible note investors, and sale broker fees; (2) investments by the founder (Wise) and other initial investors would be written down to $0, if it was the only remaining option, in order to ensure that senior debt,

---

[3] Because it is conceivable that discovery might yield some evidence of Holderread's involvement (or lack thereof) with respect to the authorship of certain statements in the Info Session packet, such dismissal shall be without prejudice.

6

convertible note investors, and the sale broker would get a return of the capital; (3) Wise had invested $2 million in Real Eats at start up; (4) Real Eats had experienced 100% growth each year since its inception, with 145% growth in 2021; (5) Real Eats had current facility sales capacity of $50M, with the anticipated additional investments and capital expenditures having the potential to grow sales capacity to $300M; (6) Real Eats was projected to generate $128 [million] net [r]ev[enue and] $18 [million in earnings before interest, taxes, depreciation and amortization] by 2025 [estimated]"; (7) Real Eats had a clear path to profitability that would result from the investment round funds, represented by an [earnings before interest, taxes, depreciation and amortization] chart; and (8) Real Eats was expected to experience substantial profit and margin growth in its direct to consumer business, and near revenue lane in business to business sales, as depicted in a chart.

While defendants are correct that plaintiff does not allege that any of Wise's affirmative statements were demonstrably false, as plaintiff observes, "[m]ore important" to its instant claims than the optimistic claims Wise made concerning Real Eats's potential growth is "what [Wise] did not disclose." (Plaintiff's Memorandum of Law in Opposition, Dkt. #27 at 4). Specifically, plaintiff alleges that at and around the Info Session, Real Eats representatives (including Wise) knew and failed to disclose, or otherwise concealed, the facts that: (1) even if there was a theoretical path to profitability using the funds from the investment round, it was neither viable nor likely, because defendant(s) had entered into limited or conditional guarantees of Real Eats's debts to its senior lender, and that senior lender had the power to seize control of Real Eats's bank account at any time; and (3) upon information and belief, defendant(s) did not intend to use the invested funds to grow the business in the manner suggested by the Info Session charts and

projections, but instead were going to apply them to reduce their personal liability and exposure to Real Eats's senior lender.

It is well settled that, "[f]raud pleadings generally cannot be based on information and belief." *Stern v. Leucadia Nat'l Corp.*, 844 F.2d 997, 1003 (2d Cir. 1988). "On the other hand, fraud allegations may be so pleaded as to facts peculiarly within the opposing party's knowledge" so long as they are "accompanied by a statement of facts upon which the belief is founded." *Id*. *See also Doe v. EviCore Healthcare MSI, LLC,* 2023 U.S. App. LEXIS 4794 at *8 (2d Cir. 2023)(fraud allegations based on information and belief may be permissible where the alleged facts are "peculiarly within the opposing party's knowledge," and if the "complaint . . . adduce[s] specific facts supporting a strong inference of fraud").

Here, plaintiff's allegations concerning Wise's alleged motive are supported by other factual allegations, including Real Eats's undisputed financial difficulties, defendants' clear incentive to lie by omission because "no reasonable potential investor 'would proceed with a transaction knowing,'" e.g., that Real Eats's projections and plans were entirely at the mercy of its senior lender who had the authority to seize its bank account, and the eventual actions by the senior lender to do just that, which Real Eats cited as the reason for its demise. *Sawabeh Inf. Servs. v. Brody*, 832 F. Supp. 2d 280, 304 (S.D.N.Y. 2011).

Plaintiff further contends that defendant(s) had a duty to disclose the precariousness of Real Eats's financial condition, because the failure to share these facts, of which defendant(s) had superior knowledge, rendered their affirmative statements of potential profitability and expansion plans misleading, creating a lie by omission. *Sea Tow Servs. Int'l v. Tampa Bay Marine Recovery, Inc.*, 632 F. Supp. 3d 91, 99, 105-06 (E.D.N.Y. 2022). While defendant(s) are correct that "a corporation is not required to disclose a fact merely because a reasonable investor would very

8

much like to know" it, such a duty may arise where the company simultaneously makes "positive assurances . . . that would necessitate additional disclosures," or that would otherwise "significantly alter[] the 'total mix' of information available." *In re UBS Ag Securities Litigation*, 2012 U.S. Dist. LEXIS 141449 at *101 (S.D.N.Y. 2012) (quoting *In re Fuwei Films Sec. Litig.*, 634 F. Supp. 2d 419, 439 (S.D.N.Y. 2009)). *See also Noble v. Mt. Olivet Church Inc.*, 2021 U.S. Dist. LEXIS 45911 at *14-*15 (finding fraud claim plausibly stated against attorney who was alleged to have failed to disclose her dual representation of both parties in a purchase of real property when giving advice, and thus to have concealed her personal interest in the matter). *See generally Universal Health Servs. v. United States ex rel. Escobar*, 579 U.S. 176, 188-89 (2016)(noting, in the context of a False Claims Act cause of action, that "half-truths – representations that state the truth only so far as it goes, while omitting critical qualifying information – can be actionable misrepresentations").

The Court concurs. Plaintiff has plausibly alleged that Wise engaged in fraud, via a series of "optimistic" statements and "positive assurances" in describing Real Eats's financial options and future, at the same time deliberately omitting and concealing facts that reflected the unlikelihood that any of those optimistic projections could ever come to fruition. These lies-by-omission included the failure to disclose the very real risk that Real Eats's senior investor would seize control of the company's bank account and wipe out every Bridge Round investor's interests in an instant – a possibility which swiftly came to fruition.

To the extent that defendants have offered evidence and arguments that attempt to raise questions of fact as to the truth of plaintiff's fraud allegations, the resolution of such factual issues is best left to a motion for summary judgment, or trial and are not a proper subject for the Court's consideration on the instant motion to dismiss.

**C.     Justifiable Reliance**

It is well settled that "[a]n investor may not justifiably rely on a misrepresentation if, through minimal diligence, the investor should have discovered the truth." *Ashland, Inc. v. Morgan Stanley & Co.*, 652 F.3d 333, 337-38 (2d Cir. 2011).

Defendants also argue that plaintiff, a sophisticated investor, was given unfettered access to all of Real Eats's financial information, which correctly and truthfully reflected the company's deteriorating financial condition, as did the Investor Deck, which showed the company's past and future projected losses, and demonstrated the need for the Bridge Round funding to keep the company afloat while it searched for a strategic buyer or Series B investor. Further, defendants claim that it is implausible for plaintiff to not have realized that some or all of the proceeds of the Bridge Round were intended by Wise to make payments and reduce his liability to Real Eats's senior lender, since the Note Purchase Agreement stated that the proceeds would be used for "general corporate expenses." Defendants also point out that plaintiff had the ability and opportunity to ask additional questions at the information session or contact defendants or their consultant, but chose not to do so.

Plaintiff argues that it exercised its due diligence, engaging a consultant to give advice on Real Eats's profitability and efficiency, but that defendants' affirmative deceptions and material omissions prevented it from making a well-informed choice to invest.

The Court is not convinced that plaintiffs have failed to plausibly allege justifiable reliance on the completeness and accuracy of the Info Session materials, or that the "unrestricted access" to Real Eats's financials that defendants claim to have provided "is apparent on the face of the [c]omplaint or can reasonably be inferred from [plaintiff's] allegations." *Frommer v. MoneyLion Techs. Inc.*, 2024 U.S. Dist. LEXIS 86769 at *31-*32 (S.D.N.Y. 2024). In any event, factual issues

surrounding a party's "use of means of verification available to it . . . is rarely appropriate for a motion to dismiss." *Sawabeh Info. Servs. Co.*, 832 F. Supp. 2d 280 at 304. Reasonable reliance is "nettlesome because it is so fact-sensitive," and as such, is a "question of fact for the jury rather than a question of law for the Court." *Id*. Here, plaintiff has detailed its attempts to exercise due diligence, including engaging a consultant to advise it about investing in Real Eats, and holding several discussions with Wise and other Real Eats representatives, and has plausibly alleged that key facts concerning senior lender liabilities and authority were deliberately omitted or concealed by Wise. As such, I find for purposes of this motion that plaintiff has plausibly alleged that its reliance on defendant(s)' statements, including half-truths and statements by omission, was justifiable. To the extent that defendants offer arguments and evidence to the contrary, determination of those fact issues must await further proceedings.

### D. Scienter (Fraudulent Intent)

In order to plausibly set forth a fraud claim, plaintiffs must "allege facts which give rise to a strong inference that the defendants possessed the requisite fraudulent intent." *Cosmas v. Hassett*, 886 F.2d 8, 12-13 (2d Cir. 1989). The requisite inference may be drawn where a plaintiff alleges: "(a) facts showing that defendants had both motive and opportunity to commit fraud, or (b) facts constituting strong circumstantial evidence of conscious misbehavior or recklessness." *ATSI Communs., Inc. v. Shaar Fund Ltd.*, 493 F.3d 87, 99 (2d Cir. 2007). "Motives that are generally possessed by corporate directors and officers do not suffice; instead, plaintiffs must assert a concrete and personal benefit to the individual defendants resulting from the fraud." *Sawabeh Info. Servs.*, 832 F. Supp. 2d 280, 296 (quoting *Laknit v. Eichler*, 264 F.3d 131, 139 (2d Cir. 2001)).

Here, plaintiff has sufficiently alleged that Wise acted with scienter, plausibly alleging his motive and opportunity to commit fraud by recklessly failing to disclose Real Eats's true and

complete financial condition to potential investors, including Real Eats's complete susceptibility to its senior investor, and the truth about how invested funds would be used. Plaintiff has also plausibly alleged that by virtue of his statements and omissions, Wise stood to receive direct financial benefits, including the ability to use invested funds to reduce his personal liability to Real Eats's senior lender, rather than assist the company to achieve the growth and expansion and/or strategic sale plans that were pitched to potential investors. *See Aboutaam v. Assaad*, 2020 U.S. Dist. LEXIS 57123 at *24-*25 (S.D.N.Y. 2020)(fraudulent intent is plausibly alleged, where plaintiff avers that defendant recklessly lied about "critical information that would have affected an investor's perception about [the company's] likelihood of success"); *Sawabeh Info. Servs. Co. v. Brody*, 832 F. Supp. 2d 280, 303-04 (S.D.N.Y. 2011) (scienter is plausibly alleged where defendant, whose company was undergoing financial troubles and who was in danger of being held personally liable for the company's debt, recklessly failed to disclose those facts to investors).

## CONCLUSION

For the reasons stated above, defendant's motion to dismiss the initial complaint (Dkt. #11) is denied as moot, plaintiff's cross motion to amend the complaint (Dkt. #20) is granted, and the second proposed amended complaint (Dkt. #20-4) is now the operative pleading in this matter. Defendants' second motion to dismiss (Dkt. #22), as applied to that pleading, is granted in part,

and denied in part. Plaintiff's claims against individual defendant Holderread are dismissed, without prejudice. Plaintiff's fraud claim against individual defendant Wise is not dismissed.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
July 2, 2024.